## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTINA CHAPMAN,<br><br>          Defendant. | Crim. Action No. 1:24CR220(RDM) |

## **MEMORANDUM IN AID OF SENTENCING**

Christina Marie Chapman will be before the Court on July 24, 2025 for sentencing, having accepted responsibility for the regrettable part she played in a fraudulent scheme. Following extensive plea negotiations, the parties agreed that 111 months of incarceration is sufficient but no greater than necessary to meet the goals of sentencing, and we respectfully ask the Court to sentence accordingly.

### I. Legal Standard

As this Court is well aware, in determining a sentence, courts must impose the least amount of imprisonment necessary to accomplish the purposes set forth in § 3553. 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary . . ." (emphasis added)). The Sentencing Guidelines ("Guidelines") range is advisory, to be considered alongside the other factors that § 3553(a) enumerates. *See United States v. Booker*, 543 U.S. 220 (2005).

**A. Christina Chapman's history and characteristics and the nature and circumstances of the offense counsel in favor of acceptance of the 111 month agreement**.

1

Christine Chapman's life story is one marked by profound adversity, instability, and trauma, beginning at birth and persisting throughout her formative years and into adulthood. This background helps to explain—not excuse—how she came to engage in the conduct underlying this case.

Ms. Chapman was born in Busan, South Korea, to Pamela Rae Revier and Joseph Edward Chapman, while her father was stationed there with the United States Marine Corps. Her early childhood was marred by her father's infidelity, alcoholism, and emotional absence. When Ms. Chapman was approximately five years old, her parents separated. Rather than providing their children with stability, her parents moved them back and forth between California and Minnesota on a near-constant basis, forcing Ms. Chapman to change schools nearly every year. Between kindergarten and her senior year of high school, she attended more than a dozen schools across multiple states, leaving her socially isolated, bullied, and unable to form lasting friendships or a sense of belonging.

Her home environment was equally chaotic and abusive. She endured physical and emotional abuse at the hands of her father's girlfriend, as well as severe and escalating violence from her older brother, who repeatedly beat and choked her, held a shotgun to her chest, and once left her so visibly bruised that her school intervened. Yet her father minimized and excused her brother's conduct, often forcing Ms. Chapman to apologize to her abuser. In addition to this physical abuse, Ms. Chapman was sexually abused at various points in her childhood and adolescence by family members, peers, and even individuals she believed to be friends.

2

Throughout this period, her father's alcoholism and repeated infidelity created further dysfunction. She grew up in a household where emotions were suppressed and traumatic events were ignored or concealed. As a result, Ms. Chapman developed into adulthood without the tools or resources to process her trauma, regulate her emotions, or build healthy relationships.

Despite graduating from high school, Ms. Chapman was never able to pursue her dream of attending fashion school. Instead, she drifted between low-paying jobs and unstable housing in an ongoing effort to support herself financially. In her twenties, her parents finally divorced, but by then her relationship with her father had deteriorated beyond repair.

Ms. Chapman's most stable relationship as an adult was with her mother, who became her primary source of emotional support. That relationship took on a caregiving dimension in 2018, when her mother was diagnosed with renal cancer. Determined to help her mother retire and afford her treatment, Ms. Chapman pursued further education and ultimately enrolled in a computer science bootcamp. Shortly after completing the program, she was recruited for a job that became the basis for the instant offense.

At the time, Ms. Chapman did not fully understand the illegality of what she was being asked to do. What she did understand was that—for the first time in her life—she was financially stable and able to provide for her mother's needs. The job enabled her to purchase medical equipment, pay bills, and allow her mother to stop working and focus on her health. Even after she realized that the job was not legitimate, she continued out of

3

fear of losing the ability to care for her terminally ill mother, who passed away in April 2023.

It is against this backdrop of lifelong trauma, untreated mental health conditions, and a desperate sense of obligation to her mother that Ms. Chapman made the decisions that bring her before this Court. Importantly, she has since sought and engaged in meaningful mental health treatment, including weekly trauma-focused therapy and participation in an intensive outpatient program. She has been diagnosed with PTSD and ADHD, and has made measurable progress under the care of her treatment providers. Her probation officer has observed significant improvement in her mental health since her arrest.

This history of adversity and her demonstrated commitment to treatment and rehabilitation weigh heavily in mitigation. Ms. Chapman respectfully submits that this Court may consider her background and her efforts at rehabilitation as grounds for leniency under 18 U.S.C. § 3553(a), particularly in light of the principle that sentencing should reflect not only the seriousness of the offense but also the history and characteristics of the defendant.

### B. The goals of sentencing will be met with 111 month period of imprisonment followed by intensive mental health services.

The history and characteristics of Christine Chapman demonstrate that a sentence of 111 months of imprisonment, followed by intensive mental health treatment and supervision, is sufficient to satisfy the purposes of sentencing set forth in 18 U.S.C.

§ 3553(a)(2). Such a sentence would appropriately reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public—while also recognizing Ms. Chapman's significant mitigation and her demonstrated capacity for rehabilitation.

As detailed above, Ms. Chapman endured an extraordinary degree of adversity throughout her life. Her childhood was marked by repeated moves, parental neglect, emotional and physical abuse by family members, and repeated sexual victimization beginning at the age of five. These experiences left her socially isolated, emotionally scarred, and without the stability or support systems most people rely on to develop resilience and sound judgment. The dysfunction of her family environment taught her to suppress her own needs, tolerate mistreatment, and make short-sighted decisions in pursuit of acceptance and stability. The effects of this trauma continued into adulthood, undermining her ability to form lasting relationships, maintain employment, and address her mental health needs.

At the same time, Ms. Chapman has never been accused of violent conduct, and her offense conduct here—while serious—was driven in large part by her desperation to care for her terminally ill mother. When presented with the opportunity to earn enough money to allow her mother to stop working and focus on her health, Ms. Chapman made a profoundly poor choice, but one that was motivated by filial loyalty, not malice or greed. Once engaged in the scheme, she lacked the emotional and cognitive resources to extricate herself, and the trauma she carried impaired her ability to exercise judgment under stress.

Since her arrest, Ms. Chapman has demonstrated both insight into her wrongdoing and a sincere commitment to change. With the help of her probation officer, she engaged in trauma-focused therapy, enrolled in an intensive outpatient mental health program, and began taking prescribed medication to treat her diagnosed PTSD and ADHD. Her treatment providers and supervising officer have noted significant improvement in her mental health and stability since beginning this work. Research has consistently shown that targeted treatment of trauma-related disorders reduces the risk of recidivism, improves self-regulation, and facilitates successful reentry into society.

Accordingly, a sentence of 111 months—already a substantial term that reflects the seriousness of the offense—is sufficient but not greater than necessary to achieve the goals of sentencing. It provides just punishment, specific and general deterrence, and protection of the public while also recognizing the mitigating force of Ms. Chapman's personal history, the extraordinary adversity she has endured, and the meaningful steps she has already taken toward rehabilitation. Further imprisonment beyond this period would serve no additional penological purpose, particularly given the vital need for her continued mental health care and structured supervision upon release.

## Conclusion

Ms. Chapman respectfully submits that this Court can be confident that a sentence of 111 months, coupled with a robust requirement of continued mental health treatment and supervision, will achieve the purposes of § 3553(a) and allow her to emerge from incarceration a healthier, more stable, and law-abiding member of society.

Respectfully submitted,


A.J. KRAMER
Federal Public Defender


_____/s/_____
ALEXIS GARDNER
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500